IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CLAUDIA LUJAN, individually and on behalf of
O.S., a minor child, MIGUEL DE HARO, individually,
and on behalf of M.D.H., a minor child, FABIOLA VILLEGAS,
individually, and on behalf of a minor child, L. R.,
JULIANA ARMENDARIZ, individually, and on behalf of minor child H.M.,

    Plaintiffs,

v.                                                                                         No. 25-840-JFR/KK

SCOTT ELDER, LILY GELABERT, and
ALBUQUERQUE PUBLIC SCHOOLS,

    Defendants.

## SECOND AMENDED COMPLAINT FOR DAMAGES FOR INJURIES, CIVIL RIGHTS VIOLATIONS, AND NEW MEXICO TORT CLAIMS

Plaintiffs Claudia Lujan, Miguel De Haro, Fabiola Villegas, and Juliana Armendariz (hereinafter "Plaintiffs") as parents of students O.S., M.D.H., L.R., and H.M., minor children, by and through their counsel The Law Offices of Cameron and Russell (Bill Russell, Esq.), bring the following complaint for damages against Defendants, and state as follows:

### JURISDICTION AND VENUE

1.  Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

2.  All of the material acts and omissions alleged herein occurred in the City of Albuquerque, County of Bernalillo, and the State of New Mexico.

3.  Venue in this district is proper under NMSA 1978, Section 41-4-18.

4.  This Complaint is timely pursuant to NMSA 1978, Section 41-4-15 and Section 41-4A-7.

5.  All of the acts complained of herein, which constitute the basis for liability on the claims brought under the New Mexico Tort Claims Act and the Constitution of New Mexico, are claims for which the government has waived immunity.

6. Plaintiffs gave written notice of the claims contained herein under the New Mexico Tort Claims Act and the Constitution of New Mexico.

7. All notice requirements under the New Mexico Tort Claims Act and the Constitution of New Mexico were properly complied with because all applicable Defendants had written, actual, and constructive notice within ninety (90) days of the events that gave rise to the claims brought forth herein.

**PARTIES**

8. Plaintiff Claudia Lujan is the mother of Student O.S., a minor child, and a resident of Bernalillo County, New Mexico.

9. Plaintiff Miguel De Haro is the father of Student M.D.H., a minor child, and a resident of Bernalillo County, New Mexico.

10. Plaintiff Fabiola Villegas is the mother of Student L.R., a minor child, and a resident of Bernalillo County, New Mexico.

11. Plaintiff Juliana Armendariz is the mother of Student H.M., a minor child, and a resident of Bernalillo County, New Mexico.

12. Students were all enrolled in the 4th-grade at Atrisco Elementary School (hereinafter "Atrisco"), which is part of Albuquerque Public Schools (hereinafter "APS").

13. Scott Elder (hereinafter "Defendant Elder") was the superintendent of APS on April 21, 2021, the date of the acts complained of herein. Upon information and belief, Defendant Elder is a resident of Bernalillo County, New Mexico.

14. Lily Gelabert (hereinafter "Defendant Gelabert") was employed by APS as a 4th-grade teacher at Atrisco on April 21, 2021, the date of the acts complained of herein. Upon information and belief, Defendant Gelabert is a resident of Bernalillo County, New Mexico.

15. APS has schools within Bernalillo County, including Atrisco. Defendant APS is a school district organized under the laws of the State of New Mexico and is responsible for operating schools within Albuquerque and Bernalillo County, New Mexico, and administering the district's policies and procedures.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

16. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

17. At around 7:30 am on the morning of April 21, 2021, Mrs. Gelabert arrived at school and presented in her classroom for what was seemingly going to be a normal day of instruction. She would have gotten ready at her home with her husband, Pablo Barragan, on the day of the incident, where he would have identified her behavior and allowed her to drive and present at school for instruction.

18. At or around 8:00 am, when the instruction began, Mrs. Gelabert became erratic and began to groan, grunt, and moan at the students. Frightening them.

19. Seemingly, the incident was in good fun until Mrs. Gelabert pounced on Student O.S. and began to beat him and ripping his COVID-19 mask off his face.

20. Mrs. Gelabert threw student O.S. to the ground and pinned him down, placing her knee and elbow on his back in a wrestling or police-style hold. The children in the classroom had to all push her off O.S.

21. O.S. tried to run for help from another teacher. Mrs. Gelabert stood in the doorway and blocked him and the other Students from leaving.

22. The students tried to call for help and attempted to reach out to the students learning remotely. Nothing could be done to help the children as Mrs. Gelabert was in an erratic episode, preventing the students from calling for help or leaving the class.

23. Mrs. Gelabert locked them in the classroom.

24. At some point in the morning, the recess bell rang, and the Students attempted again to run out of the classroom. This effort was prevented again by Mrs. Gelabert, who led them into the hall, beating on them and ripping their masks from their face.

25. Mrs. Gelabert then started to throw footballs and soccer balls at the students in the hall. It was clear this was not a game, and she was targeting the Students to hurt them.

26. At some point in the hall, a teacher approached Mrs. Gelabert and recognized she was acting out of character. Mrs. Gelabert ripped her mask from her face. The teacher allegedly went to alert the administration and the Student Resource Officer.

27. Around lunchtime, M.D.H. went to wash his hands and Mrs. Gelabert came up to him while he was trying to wash his hands. She then hit him in the nose with the dry-erase board.

28. M.D.H. was told by the other students to hide under the desk because his teacher was acting badly.

29. Mrs. Gelabert pushed student L.R. and hit the student with her cell phone on his face, then pulled the hoodie over his head and attempted to pull him down and choke him.

30. Immediately after, Mrs. Gelabert walked up to student H.M., pulled her COVID mask, and tried to choke her with the mask.

31. Mrs. Gelabert then went outside to disrupt another group of Students at recess. She began to throw and kick balls, dance around aimlessly, and shout on a megaphone.

32. She confined, assaulted, and battered Students in various ways before she was subdued by the Student Resource Officer and other members of the administration. Her husband, Mr. Barragan, was contacted about the incident.

33. Mr. Barragan arrived at the school at or around the time the Bernalillo County Sheriff's Officers (BCSO), as well as Rescue Personnel, arrived and detained Mrs. Gelabert, strapping her to a gurney to transport her to the hospital.

34. While being interviewed by BCSO, Mr. Barragan stated Mrs. Gelabert had done this before.

## COUNT I: NEGLIGENCE
## (ALL DEFENDANTS)

35. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

36. All Defendants had a duty to use ordinary care to keep the premises of the school safe for the children.

37. All Defendants had a duty to take every reasonable precaution to provide for the safety and care of the students participating in the classroom, including Students O.S., L.R., M.H., and M.D.H.

38. As a direct and proximate result of Defendants' negligence, Students O.S., L.R., M.H., and M.D.H. sustained serious physical and emotional injuries and have incurred damages which include but are not limited to past and future medical expenses; past and future pain and suffering; loss of enjoyment of life, incidental and consequential damages; pre-and post-judgment interest; and costs.

## COUNT II: NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION
## (DEFENDANT APS)

39.     Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

40.     Defendant Gelabert assaulted Students O.S., L.R., M.H., and M.D.H., which caused the students' injuries.

41.     Defendant APS had a duty to exercise ordinary care in the hiring, training, supervision, and retention of its employees in a manner that ensured a safe place for Students O.S., L.R., M.H., and M.D.H. to learn.

42.     Defendant APS knew or should have known that the employee it hired, specifically Defendant Gelabert, had a history of mental illness, drug use, or instability giving rise to violent and harmful tendencies.

43.     Defendant APS, because it knew or should have known that Defendant Gelabert had a history of mental illness and had reason to know that Defendant Gelabert was likely to be a risk of danger and harm to students attending Atrisco.

44.     Defendant APS breached its duty to the students, specifically Students O.S., L.R. M.H., and M.D.H., by failing to provide adequate hiring, training, and supervision in ways that remain to be discovered.

45.     At all times material hereto, Defendant Mrs. Gelabert and APS, and their agents and employees were negligent in providing proper care, trained personnel, and policies concerning the attendance of the school facility where Students O.S., L.R., M.H., and M.D.H. were attending and participating in learning activities as students.  As a result of such negligence, there is a waiver of sovereign immunity under the New Mexico Tort Claims Act, NMSA 1978, Section 41-4-6 through 27.

46. As a direct and proximate result of Defendants' negligence, Students O.S., L.R., M.H., and M.D.H. sustained physical and emotional injuries and have incurred damages which include but are not limited to past and future medical expenses; past and future pain and suffering; loss of enjoyment of life, incidental and consequential damages; pre-and post-judgment interest; and costs.

### COUNT III: APS' LIABILITY UNDER THE NEW MEXICO CIVIL RIGHTS ACT

47. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

48. Plaintiffs' rights under the New Mexico Bill of Rights include a substantive due process right to bodily integrity.

49. Plaintiffs' rights under the New Mexico Bill of Rights include a right to be free of unreasonable seizure.

50. Defendants at all times relevant to this action were acting under the color of state law of New Mexico.

51. The abuses inflicted upon Students by Mrs. Gelabert constitute the clear deprivation of numerous rights secured to Plaintiffs under the New Mexico Bill of Rights (including but not limited to those rights secured to Plaintiffs by Article II, Sections 4, 10, and 18).

52. Plaintiffs' rights under Article II, Sections 4, 10, and 18 are afforded greater protections than their analogous rights under the United States Constitution.

53. Defendant APS is a public body as that term is defined in Section 41-4A-2 of the New Mexico Civil Rights Act.

54. At all times material to this Complaint, teacher Defendant Mrs. Gelabert was a person acting on behalf of, under color of, or within the course and scope of the authority of APS for purposes of Section 41-4A-3(A) of the New Mexico Civil Rights Act.

55. As a person acting on behalf of, under color of, or within the course and scope of the authority of APS, Mrs. Gelabert had a constitutional duty to respect Plaintiffs' right to bodily integrity and right to be free of unreasonable seizure under the New Mexico Bill of Rights.

56. Mrs. Gelabert deliberately breached this constitutional duty with respect to each Plaintiff, and in doing so caused harm to each Plaintiff.

57. Plaintiffs, Students O.S., L.R. M.H., and M.D.H., have suffered serious harm as a direct result of the deprivations of their state constitutional rights by Mrs. Gelabert, and these deprivations of rights are the proximate cause of serious harm to Plaintiffs, Students O.S., L.R. M.H., and M.D.H.

58. Because Mrs. Gelabert breached her constitutional duty to students, specifically Students O.S., L.R., M.H., and M.D.H., and thereby caused the deprivation of their rights under the New Mexico Bill of Rights, APS is responsible for the harms and damages that Students have suffered as a result.

WHEREFORE, Plaintiffs request judgment against Defendant APS in an amount reasonable to compensate them for damages, for interest, including pre-judgment interest, costs, reasonable attorneys' fees, and such other and further relief as this Court may deem appropriate, including punitive damages.

**COUNT IV: <u>VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983</u>
<u>(Defendant APS and Defendant Gelabert)</u>**

59. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

60. At all times material hereto, Defendant Gelabert was acting under the color of state law as a public school teacher employed by Defendant APS.

61. Defendant Gelabert, while acting under color of state law, deprived Students O.S., L.R., M.H., and M.D.H. of rights, privileges, and immunities secured by the Constitution and laws of the United States.

62. Specifically, Defendant Gelabert's conduct violated Plaintiff's rights under the United States Constitution by depriving Plaintiffs of the right to enjoy life and liberty, seek and obtain safety and happiness, be secure in their person, right to bodily integrity, equal protection under the law, and due process.

63. The corporal punishment administered by Defendant Gelabert was objectively unreasonable and excessive under the circumstances, causing unnecessary and wanton infliction of pain.

64. Defendant Gelabert's actions were taken with deliberate indifference to, or reckless disregard for, Students O.S., L.R., M.H., and M.D.H.'s constitutional rights and physical safety.

65. Defendant APS is a municipal entity subject to liability under 42 U.S.C. § 1983.

66. Defendant APS maintained policies, customs, and practices that directly caused the constitutional violations suffered by Plaintiff, including: a) **Policy of Deliberate Indifference:** Maintaining inadequate policies regarding the use of corporal punishment that failed to provide constitutional safeguards; b) **Failure to Train:** Failing to adequately train teachers and staff regarding constitutional limits on corporal punishment and appropriate disciplinary methods; c) **Failure to Supervise:** Failing to adequately supervise teachers' use of corporal punishment and

disciplinary practices; d) **Custom of Tolerance:** Maintaining a custom or practice of tolerating excessive corporal punishment and molestation by teachers without adequate investigation or corrective action.

67. These policies, customs, and practices were maintained with deliberate indifference to the known or obvious consequences that constitutional violations would result.

68. Defendant APS's policies, customs, and practices were the moving force behind the constitutional violations suffered by Students O.S., L.R., M.H., and M.D.H.

69. Officials of Defendant APS with final policymaking authority were aware of, or should have been aware of, the need for more or different training, supervision, and policies regarding corporal punishment.

70. As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1983, Students O.S., L.R., M.H., and M.D.H. has suffered and continues to suffer: a) Physical pain and injury; b) Emotional distress and trauma; c) Humiliation and degradation; d) Loss of enjoyment of educational opportunities; e) Impairment of his sense of personal security and dignity.

71. Defendants' conduct was undertaken with malice, willfulness, and reckless indifference to Plaintiff's federally protected rights, warranting an award of punitive damages against Defendant Gelabert in her individual capacity.

72. At the time of the incident, it was clearly established law that public school officials could not administer corporal punishment that was excessive and unreasonable under the circumstances.

73. Any reasonable public-school teacher in Defendant Gelabert's position would have known that the conduct alleged herein violated clearly established constitutional rights.

74. Therefore, Defendant Gelabert is not entitled to qualified immunity from suit.

**WHEREFORE,** Students O.S., L.R., M.H., and M.D. respectfully request judgment against Defendants in favor of Plaintiffs and against Defendants on this Count; award Plaintiff compensatory damages in an amount to be determined at trial; award Plaintiffs punitive damages against Defendant Gelabert in her individual capacity; award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and grant such other and further relief as this Court deems just and proper.

### COUNT V: DEFENDANT GELABERT'S ASSAULT, BATTERY, CHILD ABUSE, AND FALSE IMPRISONMENT OF PLAINTIFFS

75. Plaintiffs reiterate all prior allegations as though fully stated herein.

76. Defendant Mrs. Gelabert's conduct towards Students O.S., L.R., M.H., and M.D.H. was unlawful, threatening, and menacing conduct, which they believed to be an immediate battery.

77. Defendant Mrs. Gelabert's conduct was unlawful, intentional touching and application of force to Students O.S., L.R. M.H., and M.D.H. in an insolent manner.

78. Defendant Mrs. Gelabert's conduct resulted in and led to an intentional confinement and restraint of Students O.S., L.R., M.H., and M.D.H. without their consent and done without knowledge that Defendant Mrs. Gelabert had the lawful authority to do so.

79. As a direct and proximate result of these intentional acts by Mrs. Gelabert, Students O.S., L.R., M.H., and M.D.H. each suffered harm in the form of child abuse.

**WHEREFORE,** Students O.S., L.R., M.H., and M.D. request judgment against Defendants to compensate them for damages, for interest, including pre-judgment interest, costs, and such other and further relief as this Court may deem appropriate, including punitive damages.

### DAMAGES

WHEREFORE, Plaintiff respectfully requests relief from this Court as follows:

A.   For judgment against the Defendants in an amount sufficient to compensate Plaintiff for her injuries and damages, including but not limited to past and future medical damages, past and future pain and suffering, incidental and consequential damages, loss of enjoyment of life, pre-and post-judgment interest, and other damages to which she is entitled to or can be proven at trial.

B.   For an order that Plaintiff will recover all her costs incurred in the prosecution of this matter.

C.   For interest on all sums awarded from the date of the filing of this Complaint, until paid in full.

D.   For such other and further relief as the Court deems just and proper.

**JURY DEMAND RULE 38(B)**

Pursuant to Fed. R. Civ. P. 38(B) to Plaintiffs respectfully demand a jury on all issues so triable.

Respectfully submitted,

**THE LAW OFFICES OF CAMERON & RUSSELL**

*/s/ Bill Russell*
Bill Russell
6311 Montano Rd. NW
Albuquerque, NM 87120
Telephone: (505) 218-7844
Facsimile: (505) 672-5128
bill@crlawnm.com

-   and

**DAVIS LAW GROUP**

Frank T. Davis
924 Park Ave SW, Suite D
Albuquerque, NM 87102
Telephone: 505-503-6032 (Office)

frank@davislegal.org

*Attorneys for Plaintiff*

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was submitted for electronic filing through the CM/ECF system on September 19, 2025, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jennifer G. Anderson
Tomas J. Garcia
Modrall Sperling Roehl Harris & Sisk, P.A.
500 Fourth St. NW, Suite 1000
Albuquerque, New Mexico 87102
Telephone: 505.848.1800
jga@modrall.com
tjg@modrall.com

*Attorneys for Defendant Board of Education of Albuquerque Public Schools*

Roxie P. De Santiago
Walsh Gallegos Kyle Robinson & Roalson P.C.
500 Marquette Ave. NW, Suite 1310
Albuquerque, New Mexico 87102
Telephone: 505.243.6864
Fax: 505.843.9318
rdesantiago@wabsa.com

*Attorney for Defendant Lily Gelabert*